AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of California

**FILED**
MAR 28 2019
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

Pink Apple iPhone 10

Case No. **19MJ1299**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

**SEE ATTACHMENT A
(INCORPORATED HEREIN)**

located in the ____Southern____ District of ____California____, there is now concealed *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B
(INCORPORATED HEREIN)**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC § 2422 | Coercion and Enticement |
| 18 USC § 1591 | Sex Trafficking by Force, Fraud, or Coercion |

The application is based on these facts:

**SEE AFFIDAVIT OF SPECIAL AGENT MIKE J. ROD, INCORPORATED HEREIN.**

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Special Agent Mike J. Rod, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 3/28/19

*Judge's signature*

City and state: San Diego, CA

Honorable Bernard G. Skomal U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A

### PROPERTY TO BE SEARCHED

A pink I-Phone 10 (**Target Telephone**)




The **Target Telephone** is currently in the possession of the FBI, 10385 Vista Sorrento Parkway, San Diego, CA 92121.

# ATTACHMENT B
# ITEMS TO BE SEIZED

Authorization to search the cellular phones described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephones. The seizure and search of the cellular telephones shall be conducted in accordance with the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephones will be electronic records, communications, and data such as emails, text messages, photographs, audio files, videos, and location data, for the period of October 1, 2018 to and including March 5, 2019:

a. tending to indicate efforts to recruit, entice, harbor, transport, provide, obtain, advertise, maintain, patronize, or solicit a person to engage in a commercial sex act by means of force, threats of force, fraud, coercion, or any combination of such means;

b. tending to indicate efforts or attempts to persuade, induce, entice, or coerce any individual to travel in interstate or foreign commerce, or in any Territory or Possession of the United States, to engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense;

c. tending to identify other facilities, storage devices, or services–such as email addresses, IP addresses, phone numbers–that may contain evidence of the efforts described in (a) and (b);

d. tending to identify co-conspirators, criminal associates, or others involved in the efforts described in (a) and (b);

e. tending to identify funding sources, bank accounts, and financing methods involved in the efforts described in (a) and (b);

f. tending to identify the user of, or persons with control over or access to, the Target Telephone; or

g. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data described above;

**which are evidence of violations of Title 18 U.S.C. sections 1591 and 2422.**

# AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Michael Rod, being duly sworn, declare and state:

## PURPOSE OF AFFIDAVIT

1. This affidavit supports an application for a warrant to search a pink I-Phone 10, as further described in Attachment A (the "**Target Telephone**"), and seize evidence of crimes, specifically, violations of Title 18, United States Code, Sections 1591 and 2422, as more particularly described in Attachment B.

2. This search supports an investigation by the San Diego Human Trafficking Task Force (HTTF) into Cedric JORDAN, who is suspected of committing one or more of the crimes mentioned above. A factual explanation supporting probable cause follows. Based on the information below, there is probable cause to believe that a search of the **Target Telephone**, as described in Attachment A, will produce evidence of the aforementioned crimes, as described in Attachment B.

3. The **Target Telephone** was seized from Nicollette PERRY on March 5, 2019, after she was arrested by National City Police Department on a probation violation at the Ramada Inn located at 700 National City Blvd, San Diego, California. The **Target Telephone** was later turned over to the Federal Bureau of Investigations (FBI) and logged into evidence in San Diego, California. It remains in the possession of the FBI at their offices located at 10385 Vista Sorrento Parkway, San Diego, CA 92121, in the Southern District of California.

4. Except as otherwise noted, information set forth in this affidavit has either been observed or provided to me by task force officers from the HTTF or other multi-agency federal, state, and local task force officers with whom I have spoken, whom were involved in this investigation, or whose reports I have read and reviewed. Because this affidavit is being submitted for the limited purpose of seeking the search warrant specified above, I have not set forth each and every fact learned during the course of the investigation. Rather, I have set forth only those facts that I believe are necessary to establish probable cause for the requested warrant.

## TRAINING AND EXPERTISE

5. I am an investigative or law enforcement officer within the meaning of Title 18, United States Code, Section 2510(7); that is, an officer of the United States, who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Titles 18 and 21 of the United States Code.

6. I am a Special Agent of the FBI, and have been so employed since May 2010. I am currently assigned to the San Diego Field Division. Prior to joining the FBI, I was a United States Marine Corps Judge Advocate serving on active duty from November 2001 until May 2010. In my capacity as a Judge Advocate, I prosecuted and defended violations of the Uniform Code of Military Justice, acted as the Investigating Officer during criminal proceedings, provided legal assistance to service members, and advised military commanders on a wide variety of civil and administrative matters.

7. I have received twenty-one weeks of training at the FBI Academy in Quantico, Virginia. During that training, I received instruction regarding a wide variety of investigative techniques that are commonly used in support of a wide range of the FBI's investigative priorities. The training included instruction regarding the use of sources, electronic surveillance techniques, law enforcement tactics, search and seizure laws and techniques, surveillance, forensic techniques, interviewing, and a variety of other subjects. I have acted as the lead investigator on a variety of cases and have participated in multiple cases that have focused on gang related matters.

8. Between July 2012 and February 2019, I was assigned to the North County Regional Gang Task Force (NCRGTF). During my time at the NCRGTF, I had personal contact with dozens of self-admitted or known gang members and their associates and have discussed their lifestyles, method of operations regarding violent and property crimes, and their drug trafficking and drug distributing activities. I have participated in investigations involving criminal gang members including but not limited to Hispanic criminal street gangs. In March 2019, I was assigned to the HTTF and have assisted in cases involving

human trafficking and the sexual exploitation of adults and children. During my time as an FBI agent, I have performed various investigative tasks involving the following:

  a. Functioning as a surveillance agent and thereby observing and recording movements of gang members trafficking in illegal drugs and weapons, and those suspected of committing violent crimes and trafficking in illegal drugs and weapons;

  b. Tracing monies and assets gained by drug traffickers from the sale of illegal sale of drugs and weapons (laundering of monetary instruments);

  c. Interviewing dozens of witnesses, cooperating individuals, and confidential informants relative to gang activities including: violent acts, illegal trafficking of drugs and the distribution of monies and assets derived from illegal trafficking of drugs;

  d. Monitoring and reviewing thousands of recorded jail calls as well as recorded telephone calls pursuant to Title III court orders in narcotics and gang-related cases as well as handled Confidential Human Sources with access to drug dealers, firearms dealers, gang members and the Mexican Mafia hierarchy; and

  e. Supervising, as a case agent/co-case agent, specific investigations involving criminal gangs, trafficking of drugs, weapons, human trafficking, and the laundering of monetary instruments.

  9. Through my training, experience, and consultation with other law enforcement officers, I have learned that:

  a. Individuals involved in illicit commercial sex maintain records, including electronic files, related to their illicit business on cellular telephones, computers and computer servers hosting internet applications such as electronic mail (email) and personal social networking web pages;

  b. Individuals involved in illicit commercial sex often solicit clients through electronic advertisements and other media, such as Craigslist, MegaPersonals, Skipthegames, and other social media sites accessed on cellular telephones and computers;

3

  c. Individuals involved in illicit commercial sex maintain records of correspondence relating to client contact information as well as travel and lodging arrangements involved in such illegal activity on cellular telephones and computers;

  d. Individuals involved in illicit commercial sex maintain documents and files containing names of associates and/or coconspirators involved in prostitution on cellular telephones and computers;

  e. Individuals involved in illicit commercial sex maintain financial records, bank statements, money orders, money order receipts, and cash that are evidence of payments made in conjunction with prostitution on cellular telephones and computers;

  f. Individuals involved in illicit commercial sex use social media sites like Facebook to find clients and prostitutes. They use Facebook messaging applications to communicate with prostitutes and customers to increase their mobility and coordinate illicit activities. Individuals involved in illicit commercial sex will often use multiple social media accounts in order to maintain contact with other pimps, prostitutes, complicit businesses, and clients. These social media accounts contain electronic data concerning instant messaging, electronic mail and social media addresses of co-conspirators and clients, including contact information for co-conspirators and clients. Individuals involved in illicit commercial sex also utilize social media to store and display, commonly known as posting, photographs, videos, and text of themselves as well as other co-conspirators for the purpose of electronic advertising and promotion of prostitution;

  g. Individuals involved in illicit commercial sex often drive vehicles, sometimes rented, leased, or registered in the names of other people, to transport themselves and coconspirators, inter and intra state, to pre-arranged meetings with clients to engage in prostitution. These same individuals often get other persons to rent hotel rooms, pay for online postings or other items to avoid detection.

 10. Based upon my experience and training, and the experience and training of other agents with whom I have communicated, the evidence of illegal activity described above in paragraphs "a" through "g" is maintained by individuals involved in illicit

4

commercial sex in places that they and their associates live and operate in, as well as in online accounts such as Snapchat, Twitter, and Facebook and email accounts, which can be accessed on computers and cellular telephones.

**FACTS AND CIRCUMSTANCES ESTABLISHING PROBABLE CAUSE**

11. On September 17, 2018, an arrest warrant was issued out of San Diego Superior Court for Cedric JORDAN (Warrant #1809202247) for violation of parole. JORDAN is a documented Lincoln Park Piru criminal street gang who uses the moniker "Lil Cedric" and is currently a parolee at large. JORDAN was convicted of being a felon in possession of a firearm and was released on parole on April 9, 2018.

12. On November 2, 2018, an arrest warrant was issued for PERRY (Warrant # SCD272380) out of San Diego Superior Court for violation of probation. PERRY was on probation following an October 3, 2017 conviction for burglary, for which she received a sentence of 230 days confinement and three years felony probation. As outlined below, PERRY was arrested on March 5, 2019 on her probation warrant.

12. On February 12, 2019, San Diego Police Department (SDPD) officers responded to a radio call of a citizen requesting police contact at an address in San Diego. The SDPD officers contacted PERRY's mother, Collette ADKINS, at this address. ADKINS relayed information to the SDPD officers that she had received from her ex-husband, MARLON PERRY, earlier that day that indicated that JORDAN had assaulted PERRY. ADKINS also reported that PERRY and JORDAN have been together for years.

13. On February 12, 2019, SDPD officers contacted MARLON PERRY who reported that on February 12, 2019, he answered a FaceTime[1] call from PERRY's phone, which he identified as having the associated phone number of 619-483-4667. MARLON PERRY reported that during the FaceTime call, he observed his daughter, PERRY, lying inside of a bathtub at an unknown location, and observed an individual who he recognized

---

[1] FaceTime is a video chat application available on Apple products which enables individuals to speak with one another using video in addition to audio. Participants are able to see the individual on the other end of the call, in real time, while the call is connected.

5

as JORDAN punching and kicking her. MARLON PERRY indicated that PERRY appeared to be conscious during the attack and attempting to defend herself by putting her hands up and yelling.

14. On or about March 5, 2019, a source of information (SOI)[2] forwarded law enforcement screen shots of two Facebook posts from Facebook screen name "Jacq Mehoff." The two screen shots are as follows:




---

[2] The SOI is not a paid informant. The SOI is a human trafficking advocate who has previously provided law enforcement with information relating to human trafficking that has proven to be true and accurate. The information provided by the SOI has largely been corroborated by independent investigation.

15. The woman in the video is tagged with the Facebook username "Marlinaa Jordan." Investigators reviewed the Facebook profile associated with "Marlinaa Jordan" and confirmed that the Facebook profile picture associated with the Facebook profile for "Marlinaa Jordan" matched PERRY's booking photograph. From my training and experience and conversations with those experienced with human trafficking investigations, I know that it is common for victims to change their last name on social media to the same last name as their "boyfriend," or trafficker. The caption to the video quotes the female as saying "Stoooop Cedric!" In this quote, "Cedric" is tagged as the Facebook username Bobo Bitckh. This bolsters my belief that JORDAN is operating as PERRY's pimp.

16. The SOI also sent the video seen in the first screen shot, which showed a female that appeared to be PERRY being beaten by a male who was videotaping the assault. Investigators have compared the booking photos of PERRY to the video and have confirmed that PERRY is the victim of the assault. In the video, the male assaulter can be heard stating "Q[3] this is for you..." and appears to assault PERRY. PERRY states, "stop hitting me..." and the male assaulter continues, "...look Q, find the bitch, blood...after I send her out tomorrow...she got her ass whooped...trying to set me up, bitch..." In response, PERRY asks, "Why would I set you up Cedric?" The male assailant replies, "...shut up bitch..."

17. Based on ADKINS's description of JORDAN and PERRY's prior relationship, the content of the Facebook posts outlined above, the identified Facebook profiles identified in the posts, as well as the content of the video, I believe that JORDAN is the individual assaulting PERRY in the video. Moreover, I know based on my training and experience that the language in the post and on the video is indicative of individuals involved in pimping and pandering; for example, the phrase "out of pocket" is commonly used to refer to a prostitute that is being disrespectful to her pimp or otherwise non-

---

[3] In the context of the video and based on my training and experience, I believe that Q is another, as yet unidentified, pimp.

7

compliant with the pimp's rules. Based on my training and experience, that the use of the word "blood" is indicative of JORDAN's membership in the Lincoln Park Piru criminal street gang.

18. Also on March 5, 2019, Investigators located an advertisement containing photographs depicting PERRY and offering commercial sex acts on the website Megapersonals.com, which is a known website used by prostitutes to solicit business. The photographs in this advertisement were "selfies" in that they appear to have been photographs taken by PERRY of her own reflection in a mirror, using a phone that she was holding in her hand. The phone that PERRY was holding in the photographs was a pink iPhone. The advertisement included a phone number listed as 602-552-8490.

19. That same day, an undercover officer (UC) contacted PERRY on the phone number listed in the Megapersonals posting [602-552-8490] and arranged an outcall date at the Ramada Inn located at 700 National City Blvd, San Diego, California. The UC coordinated the meeting via calls and texts with PERRY on the phone number from the Megapersonals posting [602-552-8490] up to the point at which she arrived to the Ramada Inn. The communications between the UC and PERRY were recorded.

20. Surveillance agents posted in the area of the Ramada Inn observed PERRY arrive in a Hyundai Elantra bearing California license plate 7UUH578, which departed immediately after dropping off PERRY. After the driver departed the area, law enforcement performed a vehicle stop of the Elantra and contacted the driver. The driver indicated that he drove for Lyft and indicated that he picked up PERRY at 640 16th Street, San Diego, CA at 7:58 p.m. and dropped off PERRY at the Ramada Inn at 8:06 p.m. According to San Diego Sheriff Department Jail records, an individual named Gabriela LOVE previously identified 640 16th Street, San Diego, California as her residence. San Diego County Sherriff's Department Electronic Jail Information Management System ("eJIMS") lists LOVE as JORDAN'S sister.

21. After arriving at the Ramada Inn, PERRY entered the prearranged room where the UC was waiting. The UC observed PERRY enter the room with the **Target Telephone**,

8

which she set down inside the room. After PERRY arrived, she agreed to provide the UC a sexual act in exchange for money. This interaction between PERRY and the UC was recorded. PERRY was arrested on her pending felony arrest warrant. Agents called the phone number from the advertisement (the same number that the UC had used to communicate with PERRY [602-552-8490]) and observed the **Target Telephone** ring. The **Target Telephone** was seized as evidence. After the arrest, investigators interviewed PERRY who admitted that she knew JORDAN and that she was the victim assaulted in the video; however, she denied that JORDAN was the individual assaulting her in the video.

22.  Investigators subsequently reviewed other websites known to be used by prostitutes to solicit business. Investigators located an advertisement offering commercial sex acts posted on the website Skipthegames.com on February 8, 2019, which appeared to contain photographs depicting PERRY and listed a location of Phoenix, Arizona. The February 2019 Skipthegames ad included many of the same pictures of PERRY that were also included on the March 2019 Megapersonals advertisement discussed above. The same telephone number [602-552-8490] was included on both advertisements. Because the March 2019 advertisement was posted in California, and the February 2019 advertisement was posted in Arizona, I believe that PERRY engages in prostitution acts in multiple states.

23.  Based on my training and experience, my conversations with those experienced in human trafficking investigations, and my knowledge of this case, I believe that it is common for those engaged in sex trafficking to use cellular telephones to coordinate commercial sex acts, and due to the nature of the associated arrest, there is reason to believe that the **Target Telephone** was used for such purpose and that evidence of crimes as described in Attachment B will be found in the **Target Telephone**. Moreover, based on my training and experience and my conversations with those experienced in human trafficking investigations, as well as ADKINS' representations that PERRY and JORDAN have been together "for years," the common language associated with pimping and prostitution that was used in the Facebook posts, and the fact that advertisements were posted in Arizona in early February 2019, I believe that JORDAN has been involved in sex

trafficking of PERRY, both in the Southern District of California and elsewhere, for some time. As such, I respectfully request permission to search the Target Device for items listed in Attachment B for the period of October 1, 2018 up to and including March 5, 2019.

## PHONE SEARCH METHODOLOGY

24.   It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must examine the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

25.   Following the issuance of this warrant, FBI will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards, call detail records, and deleted files will employ search

protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

26. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

## CONCLUSION

27. Based on the foregoing, I believe there is probable cause to believe items that constitute evidence of violations of federal criminal law, namely, violations of 18 U.S.C. sections 1591 and 2422, as described in **Attachment B**, will be found in the property to be searched, as provided in **Attachment A**.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Michael J. Rod
FBI Special Agent

SUBSCRIBED and SWORN to before me this __28__ day of March, 2019.

Hon. Bernard G. Skomal
United States Magistrate Judge

11